**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | |
|---|---|
| CNH America LLC, | ) |
| | ) |
| | ) **ORDER COMPELLING DISCOVERY** |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:10-cv-00060 |
| | ) |
| Magic City Implement, Inc. | ) |
| | ) |
| Defendant. | ) |

_____

Before the court is a motion by Magic City Implement, Inc., seeking to compel answers to several interrogatories as well as responses to document requests. The court held a telephonic hearing on the motion on February 16, 2012. For the reasons explained on the record during the hearing and as further set forth below, the court grants the motion in part.

**I.     INTRODUCTION**

This is an action instituted by plaintiff CNH America, LLC ("CNH") against defendant Magic City Implement, Inc. ("Magic City") for a judgment declaring that it has good grounds for terminating its dealership contract with Magic City for the sale of Case IH equipment.

The dealership contract at issue ("Case Dealer Agreement" or "Agreement") was entered into by Case Corporation and Magic City in August 1990. (Doc. No. 1-1). The record is not clear as to how CNH succeeded to the interests of Case Corporation. However, it appears that CNH was created following a merger of Case Corporation and New Holland, N.V., and that eventually CNH became the entity responsible for performance of the contract.

1

Magic City has filed an answer seeking to dismiss the complaint.  In addition, Magic City has filed a counterclaim seeking relief on account of CNH's failure to act in good faith, and its threatened termination of Magic City's dealership.  Magic City alleges claims for both breach of contract and violations of North Dakota's law providing dealers with certain protections against manufacturers ("North Dakota's Dealer Law").

Based on CNH's complaint, it appears the sole grounds for its proposed termination of the Case Dealer Agreement is its contention that Magic City has repeatedly failed to obtain the market share for Case IH farm products assigned to it by CNH.  Under the Case Dealer Agreement, Magic City is obligated to:

> Promote and sell Products sufficient to achieve sales objectives and a share of market satisfactory to the Company within the Dealer's Sales and Service Area.

(Doc. No. 1-1, p.1).  The Agreement is silent, however, with respect to how the sales objectives and appropriate share of the market are to be determined.[1]

Initially, Magic City's Sales and Service Area under the Case Dealer Agreement was the following:

| | | |
|---|---|---|
| 75% | McHenry County, North Dakota | |
| 25% | Renville County, North Dakota | |
| 75% | Ward County, North Dakota | |

(Doc. No. 1-1, p.12). An amendment effective May 1, 2003, increased the Sales and Service Area to:

| | | |
|---|---|---|
| 50% | Bottineau County, North Dakota | |
| 75% | McHenry County, North Dakota | |
| 50% | McLean County | |

---

[1] It appears both parties agree that the Case Dealer Agreement is limited to the sale of Case IH products given its history.  However, there is nothing in the agreement that actually states it is limited to Case IH products.  (Doc. No. 1-1).

      100%   Renville County, North Dakota
      100%   Ward County, North Dakota

(Doc. No. 1-1, p.15). The agreement further specifies that Magic City is required to service this territory from its one location in Minot, North Dakota. Id. In other words, it has not been authorized to have satellite locations for either sales or service.

On its face, the Case Dealer Agreement gives CNH absolute discretion in establishing the sales objectives and market share that Magic City is expected to meet. However, North Dakota's Dealer Law imposes a number of limitations that have the effect of substantively altering the Agreement. See Williston Farm Equip. Inc. v. Steiger Tractor, Inc., 504 N.W.2d 545, 469 (N.D. 1990). For example, N.D.C.C. § 51-07-01.1 provides the following with respect to dealer terminations:

1. Subsection (1) states any termination must be for "good cause."

2. Under subsection (2), "good cause" is limited to a failure on the part of Magic City to comply with the Dealer Agreement, but only if the failure is: (a) substantial and (b) involves a failure to comply with contract requirements that are (i) "essential and reasonable," and (ii) "not different from those requirements imposed on similarly situated dealers."

3. Subsection (2) also requires that the decision to terminate must be made in "good faith."

In addition, § 51-07-01.2 spells out a number of prohibited practices. For example, a manufacturer or supplier may not coerce a dealer into refusing to purchase equipment manufactured by another farm manufacturer. A manufacturer or supplier may not discriminate among dealers in its pricing,

3

subject to a number of exceptions. Also, and perhaps more relevant to this action, a manufacturer or dealer may not:

> 5.   Attempt or threaten to terminate, cancel, fail to renew, or substantially change the competitive circumstances of the dealership contract for any reason other than failure of the farm equipment dealer to comply with the terms of the written contract between the parties or if the attempt or threat is based on the results of a circumstance beyond the farm equipment dealer's control, including a sustained drought or other natural disaster in the dealership market area or a labor dispute.

N.D.C.C. § 51-07-01.2(5).

In addition to being a Case IH dealer, Magic City is also a long-standing dealer of New Holland brand farm equipment pursuant to a separate dealer agreement ("New Holland Dealer Agreement") that it entered into with New Holland before the Case and New Holland merger. Following the merger, it appears that CNH succeeded to the interests of New Holland in this agreement. However, CNH is not attempting to terminate Magic City as a New Holland dealer.

## II.   DISCUSSION

CNH asserts a number of objections to the interrogatories and document requests at issue, including relevancy, vagueness, and overbreadth. Before turning to the specific discovery requests, the court will address first CNH's relevancy objections.

### A.   Relevancy objections to the "New Holland information"

Magic City seeks discovery of information related to its performance as a New Holland dealer. It also seeks information about CNH's share for both New Holland and Case equipment within the State of North Dakota generally, by county, and in Magic City's Sales and Service Area. CNH contends that any information related to New Holland sales is irrelevant in this action because the dealership agreements for the Case IH and New Holland products are separate. In other words, according to CNH, the Case Dealer Agreement and the New Holland Dealer Agreement impose

separate contractual obligations and the fact that Magic City may be meeting its sales objectives and market share requirements for New Holland equipment is not a defense to termination of the Case Dealer Agreement.

At the end of the day, CNH's arguments may prevail, and the court may determine that the New Holland information being sought here is not admissible. However, given the apparent breadth of the limitations imposed by North Dakota's Dealer Law, the court is not prepared to conclude that there are no circumstances in which the information might be relevant, much less that it not discoverable under Fed. R. Civ. 26(b)(1).

For example, it appears from documents proffered by the parties that CNH requires that Magic City maintain a market share for the sale of Case IH products in its Sales and Service Area that is equal to 90% of the state-wide market share for Case IH products.[2] Assume for the moment that the market for the sale of farm equipment in Magic City's Sales and Service Area is limited, so that the only way Magic City can increase its market share of Case IH products is to take away market share from competing brands, particularly Deere and New Holland, and, likewise, the only way that a New Holland dealer can increase its market share is to take away sales of Deere and/or Case IH products. With that as an assumption, there may be an argument that whatever might have been the reasonableness of requiring a dealer to meet 90% of the state-wide average share of Case

---

[2] While the documents are unclear, it appears CNH has access to data which shows the total number of units that are sold by all dealers of competing brands of farm equipment within the State of North Dakota by each product category and that the data is broken down by county and by brand names. From this data, CNH can calculate what the average market share for Case IH products on a state-wide basis is by product category and how Magic City's sales of Case IH products in its Sales and Service Area compares to the state-wide average for Case IH products. It appears CNH makes these calculations for each product sold by Magic City and then also makes a cumulative calculation. The cumulative calculation appears to work something like this: If 300 units of farm equipment were sold in Magic City's sales area by dealers of all brands of equipment and the state-wide market share for Case IH products was 33 1/3%, then Magic City would have been expected to have sold 90% of the Case IH state-wide market share or 90 units (300*.33*.90).

IH products prior to the merger of Case and New Holland, there may be some situations post-merger where it is no longer reasonable. One example might be where CNH is competing against its own Case IH dealer by promoting the sale of New Holland products and taking away market share from Case IH products.[3] And here, while Magic City is also a New Holland dealer, it is not clear whether it is a New Holland dealer for the entire sales area for which it is a Case IH dealer.

Also, it appears that Magic City is making an argument that it is not "similarly situated" to other dealers that CNH is imposing its 90% market-share requirements on in North Dakota because of the size of its sales area relative to other dealers, and the fact that it has no satellite locations. Magic City contends it has difficulty competing in the outer reaches of its Sales and Service Area because a number of potential buyers will turn to Deere or New Holland brand equipment if there is a nearby dealer that can service the equipment. Whether this argument has any validity remains to be seen. But if there is a competing New Holland dealer in one of the outer areas of Magic City's sales area that is taking away market share for Case IH products to the benefit of CNH, then, perhaps, this is something that could be considered in determining the reasonableness of the 90% market share requirements for part or all of Magic City's sales area.

Finally, CNH argues that whether or not Magic City is a good dealer of New Holland products is irrelevant to its alleged inability to meet CNH's sales and market share requirements for Case IH products given the separate contracts and lack of any cross-default provisions. The court is not prepared to reach this conclusion at this point because of the complexity of this situation. For

---

[3] CNH argues there is nothing wrong with CNH competing against its own dealers by promoting and selling another brand of competing farm equipment that it owns. However, given the broad substantive limitations imposed by North Dakota's Dealer Law that bring into play questions of reasonableness and good faith, the court is not prepared to reach that conclusion without a more complete record. Also, it is not clear at this point what role, if any, the prohibition against a manufacturer changing the competitive circumstances of the dealership contract may have. But, arguably, the competitive circumstances did change to some degree with the Case IH and New Holland merger.

example, if CNH's real motivation in terminating Magic City as Case IH dealer is that it wants to eliminate situations where its dealers are selling both Case IH and New Holland lines of its equipment, then possibly the strength of Magic City as a New Holland dealer might be reason for why CNH is willing to proceed forward with terminating Magic City's Case IH dealership. Also, Magic City's success as a New Holland dealer may lend credence to Magic City's argument that it has difficulty competing in the outer lying areas of its sales territory for reasons other than it being a poor operator, such as the lack of a satellite facility to provide local service. There may also be other possibilities for why the information being sought may be relevant.

In summary, the court is not prepared to conclude at this early stage that the "New Holland information" will be completely irrelevant. Further, the court does not believe that the requested discovery is unduly burdensome, particularly with the limitations that will be imposed as set forth below.

### B. The particular discovery requests

#### 1. Document Request No. 4

Magic City requests documents that are demonstrative of its performance as New Holland dealer. The court will require production with respect to this request, but only beginning with year 2006.

#### 2. Document Request No. 7

Magic City seeks documents that provide information regarding its market share of New Holland equipment within its assigned trade area for each product category that Magic City is permitted to sell. The court will require production with respect to this request but only beginning

with the year 2006 and only for products for which there is, arguably, a competing Case IH counterpart that Magic City is authorized to sell.

### 3. Document Request Nos. 8 & 11

Magic City seeks documents that provide information regarding its combined market share of Case IH and New Holland products in its assigned trade area and CNH's combined market share for both lines of equipment within the assigned trade area. The court will require production with respect to this request, but subject to the same limitations for Request No. 7.

### 4. Document Request No. 13

Magic City seeks production of long range plans for dealers of Case IH products or other internal dealer management plans. The court will require production of these documents, but only to the extent that such plans were operative during the time period from 2006 to the present. With respect to this request, the court overrules CNH's relevancy objection on the grounds that the information sought could be relevant to the issue of CNH's good faith, among other things. As for CNH's confidentiality objection, the court will limit the disclosure to "attorney's eyes only" for the present and subject to any reasonable confidentiality agreement that CNH may request, but will allow the information to be used during depositions and at trial. If Magic City attorneys want to further disclose the information, they will have to seek the court's permission by appropriate motion or obtain the permission of CNH.

### 5. Interrogatory Nos. 10 & 11

Interrogatory Nos. 10 and 11 seek information regarding CNH's combined market share for Case IH and New Holland equipment within the State of North Dakota generally and by county.

The court will require that these interrogatories be answered but subject to the limitations imposed with respect to Document Request No. 7.

### 6. Interrogatory No. 17

Magic City asks in this interrogatory whether it is considered a non-replacement dealer and, if not, what plans have been made for assignment of its territory if its dealership is terminated. CNH has responded that it does not consider Magic City to be non-replacement dealer and that no plans have yet been made for assigning its territory. Magic City contends that CNH must have some potential plans under discussion for assigning its territory and that its answer needs to be supplemented. The court disagrees. CNH has provided an answer and is fully aware of its obligation to supplement its responses. Also, Magic City is free to inquire during any depositions regarding what discussions may have taken place regarding this subject.

## III. ORDER

Based on the foregoing and the reasons expressed by the court during the most recent hearing, Magic City's motion to compel discovery is **GRANTED IN PART** with respect to Document Requests Nos. 4, 7-8, 11 and 13 and Interrogatory Nos. 10 and 11, but subject to the limitations set forth above and Magic City entering into any reasonably requested confidentiality

agreement.[4]  Costs and attorney's fees will not be awarded since CNH's objections were made in good faith and are not frivolous.

**IT IS SO ORDERED.**

Dated this 28th day of February 2012.

/s/  Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge

---

[4] During the hearing, the parties alerted the court to what may be another upcoming discovery dispute regarding the amount of information that Magic City's attorneys would be entitled to obtain regarding other dealer terminations. While the court is not making a final determination now, the substantive limitations imposed by North Dakota's Dealer Law can in certain circumstances make relevant the treatment accorded other dealers. E.g., Williston Farm Equipment, Inc. v. Steiger Tractor, Inc., 504 N.W.2d at 549-551. In addition to relevancy objections, CNH expresses concerns about having to reveal information about other dealers on the grounds that it is commercially sensitive information. However, given the particular nature of the substantive limitations imposed by North Dakota's Dealer Law, including the right of a dealer not to have imposed on it requirements that are materially different from similarly situated dealers and the overall protection of "good faith," it would appear the only practical way to give teeth to these provisions is for a dealer to be able to acquire the relevant information. See id.; see also Budach Implement, Inc. v. CNH America LLC, No. 05-cv-2202, 2007 WL 2310066, *7 (D. Minn. Aug. 7, 2007) (dealer's argument that it was discriminated against failed because the dealer did not present sufficiently detailed information about the treatment accorded similarly situated dealers); Heck Implement, Inc. v. Deere & Co., 926 F. Supp. 138, 140-41 (W.D. Mo. 1996) (discussing other dealer information that might be relevant). Or, to state it differently, it is questionable that persons and entities operating under this statutory regime can reasonably expect that information about their operations will be protected from disclosure if is material to a dealer termination case. Finally, the court can provide a modicum of protection to commercially sensitive information by imposing confidentiality requirements and allowing the filing of such information under seal. In short, mere "arm waving" over the fact that other dealer information should not be disclosed because it is private or commercially sensitive is unlikely to carry the day.